■ In the Matter of TIMOTHY BROWN, an Infant, by ETHEL DAVIS, His Foster Parent and Guardian, Petitioner, v UNION FREE SCHOOL DISTRICT No. 8 et al., Respondents and Third-Party Petitioners-Respondents; AMITYVILLE UNION FREE SCHOOL DISTRICT, Third-Party Respondent-Appellant, et al., Third-Party Respondent.—In a proceeding pursuant to CPLR article 78, *inter alia,* to declare that petitioner Timothy Brown resides within the boundaries of Union Free School District No. 8 and to direct his admission to the Baldwin Harbor School at no tuition cost to himself or his foster family, the third-party respondent Amityville Union Free School District (Amityville) appeals from so much of a judgment of the Supreme Court, Nassau County, entered December 29, 1976, as directed it to reimburse the Union Free School District No. 8 (District No. 8) for all costs incurred in the education and transportation of the said petitioner. Judgment affirmed insofar as appealed from, with $50 costs and disbursements to respondents Union Free School District No. 8 *et al.* The facts are not disputed. The infant petitioner is an 11-year-old foster child in need of special education. His mother died in New Jersey in 1972 and the whereabouts of his father was, and remains, unknown. He was placed in foster care by an agency of the State of New Jersey. In September, 1973 his foster mother took him with her to live at the home of her mother in Amityville, New York. On

November 16, 1973 the latter was awarded a grant of public assistance for the child from the Nassau County Department of Social Services. He attended Amityville schools from October, 1973 through June, 1974. He was then placed with a foster care agency in the North Shore School District where he attended a Board of Cooperative Educational Services (BOCES) school. The North Shore School District absorbed the costs of his instruction. In or about June, 1976 he was placed in his present home, which is located within the boundaries of District No. 8. Since October, 1976 he has been attending a BOCES school by order of Special Term. The issue on appeal is whether Amityville or District No. 8 is responsible for his tuition costs. The general rule is that the school district responsible for the education of a child between the ages of 5 and 21 is the school district in which the child resides (Education Law, § 3202, subd 1). This was also the previous rule in the case of foster children under former subdivision 5 of section 3202 (see *Matter of Jeter v Ellenville Cent. School Dist.*, 41 NY2d 283, 285). Effective January 1, 1974, paragraph a of the new subdivision 5 (L 1973, ch 867, § 1) provides, in pertinent part: "The cost of instruction of pupils placed in family homes at board by a social services district or a state department or agency shall be borne by the school district in which each such pupil resided at the time the social services district or state department or agency assumed responsibility for the support and maintenance of such pupil". It has been held that paragraph a was enacted "with a view to relieving school districts of the financial burden of educating pupils who are placed in family homes within the district at board [receiving districts] from other school districts [sending districts]" *(Matter of Jeter v Ellenville Cent. School Dist., supra,* p 285). Amityville argues that paragraph a should not apply to the facts at bar. It urges that there was no legislative intent to protect receiving districts from the costs of educating out-of-State foster children and that the legislative intent was that the tuition of such children fall on the district where the child has his closest ties. Contending that out-of-State foster children such as Timothy have no contacts with any school district in the State of New York, Amityville argues that the legislative purpose would best be served if District No. 8, as the actual and only residential district, absorbed the cost of his education. It is clear from the State Department of Education memorandum on the new subdivision 5 that the purpose of the statute is to provide financial relief to the receiving school district. The memorandum expressly states that the "admission of such children [children placed in family homes at board by a social services district or a state department or agency] tuition free, to regular educational program is imposing a serious hardship on some school districts of the State, and in the case of handicapped children requiring special educational programs, the financial burden in some cases is becoming overwhelming" (NY Legis Ann, 1973, p 107). While reference is made in the memorandum to the fact that "neither the child nor his parents may have had any previous connection with the [receiving] school district" (NY Legis Ann, 1973, p 107), there is no authority to support Amityville's contention that the legislative intent was to place the costs of education on the district with which the child had the closest ties. At bar, both the sending district (Amityville) and the receiving district (District No. 8) are heavily burdened. Experience may prove that when out-of-State foster children are brought into this State, they tend to cluster in already hard-pressed areas. It may seem fairer or more expedient in such cases that tuition costs be borne by the district in which the child presently resides rather than by the district in which the child was initially placed in foster care in this State. However,

if relief is needed or desired, address must be made to the Legislature. The language of the statute plainly states, with certain exceptions, and the Court of Appeals has held, that the statute imposes "the cost of instruction of pupils placed in family homes at board by social services districts and State departments and agencies on the school district in which the pupil resided at the time the district, department or agency assumed responsibility for his support and maintenance" *(Matter of Jeter v Ellenville Cent. School Dist., supra,* p 285). There is nothing in the statute itself, or in the legislative history, that suggests, let alone compels, a contrary legislative meaning, intention or purpose in the case of children initially placed in foster care by an out-of-State agency (see *Matter of Jeter v Ellenville Cent. School Dist., supra,* pp 286-287). Hopkins, J. P., Margett, Damiani and O'Connor, JJ., concur. [88 Misc 2d 755.]